IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Ethel R. Hunt, ) | Civil Action No.: 3:18-cv-02682-JMC |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER AND OPINION** |
| v. ) | |
| ) | |
| Aspen Square Management, Inc., ) | |
| and Deancurt Columbia LLC DBA ) | |
| Legends at Lake Murray, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This action arises from Plaintiff Ethel R. Hunt's allegations against the South Carolina State Housing Finance and Development Authority, Fred Anthony, Jeremy Pava, Aspen Square Management, Inc. ("Aspen Square"), and Deancurt Columbia, LLC d/b/a Legends at Lake Murrary ("Deancurt"). (ECF No. 1.) The only remaining defendants in this case are Aspen Square and Deancurt ("Defendants"). The matter before the court is Defendants' Amended Second Motion for Summary Judgment (ECF No. 146). For the reasons set forth below, the court **GRANTS** Defendants' Amended Second Motion for Summary Judgment as to Plaintiff's claims for any rental or storage expenses incurred over one year beyond the alleged breach and as to Plaintiff's claims for medical expenses and **DENIES** the remainder of the Motion (ECF No. 146).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a former participant in the federal Section 8 Housing Choice Voucher ("HCV") program. (ECF No. 1 at 2 ¶ 2.) On September 1, 2015, Plaintiff sought medical assistance for shortness of breath which she believed to have been caused by mold in her apartment, unit 1308. (*Id.* at 5–6 ¶¶ 13–14.) Plaintiff was advised by a doctor not to return to apartment 1308 until an independent inspection had been performed to determine the presence of mold. (*Id.* at ¶¶ 13–15.)

1

The State Housing Authority allegedly advised Plaintiff to seek another apartment. (*Id.* at 6 ¶ 16.) Plaintiff contacted Defendants and requested to move to a different apartment. (*Id.* at ¶ 17.) Plaintiff alleges that Defendants agreed to allow Plaintiff to be transferred to apartment 204, so long as she provided notice by September 1, 2015, stating that she would vacate apartment 1308 within thirty (30) days. (*Id.* at ¶ 19.) Plaintiff claims that her daughter provided the required notice on Plaintiff's behalf via email on September 1, 2015. (*Id.* at ¶ 21.)

Plaintiff claims that Defendants later notified her that apartment 204 was not available and instead offered her apartment 203. (*Id.* at 15 ¶ 60.) Thereafter, on September 29, 2015, Defendants allegedly informed Plaintiff that she would not be able to move into apartment 203 on October 1, 2015, as expected, because the rent for apartment 203 was too high and Plaintiff did not qualify to receive financial housing assistance for that apartment. (*Id.* at 14–15 ¶¶ 58, 61.) Plaintiff alleges that she "relied of the landlord's promises as memorialized in the September 1, 2015 contract and incurred the loss of her home and the loss of her federal rental payment when the landlord failed to perform its promise to transfer her to a new apartment." (*Id.* at 19 ¶ 76.)

On September 28, 2018, Plaintiff filed a Complaint against the South Carolina State Housing Finance and Development Authority, Fred Anthony, Jeremy Pava, Aspen Square Management, Inc., and Deancurt Columbia, LLC alleging that, after making written promises to transfer Plaintiff to a new apartment free of dangerous inhalants, Defendants Aspen Square Management, Inc., and Deancurt Columbia, LLC refused to deliver keys to the new apartment. (ECF No. 1 at 1.)

On December 17, 2018, the South Carolina State Housing Authority filed a Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction (ECF No. 6). On January 22, 2019, Anthony, Pava, Aspen Square, and Deancurt ("Landlord Defendants") also filed

a Motion to Dismiss for Failure to State a Claim and Lack of Subject Matter Jurisdiction (ECF No. 23).  The court granted the State Housing Authority's Motion (ECF No. 6) and dismissed it from the case.  (ECF No. 70.)  The court granted the Landlord Defendants' Motion as to Plaintiff's first cause of action for violation of the 14th Amendment's Due Process Clause and 42 U.S.C. § 1437f and Plaintiff's third cause of action for negligence, and denied the Motion as to Plaintiff's second cause of action for breach of contract accompanied by fraudulent acts.  (*Id.*)

On November 20, 2020, Fred Anthony and Jeremy Pava filed a Motion for Summary Judgment (ECF No. 108).  In Response to the Motion, Plaintiff stated that she "never sought to establish liability against Anthony or Pava in their personal or individual capacity." (ECF No. 120 at 12.)  Plaintiff reiterated this statement at a May 13, 2021 Motion Hearing (*see* ECF No. 140), and the court subsequently dismissed Anthony and Pava on May 13, 2021, leaving only Aspen Square and Deancurt as defendants.  (ECF No. 141.)

On June 25, 2021, Defendants filed an Amended Second Motion for Summary Judgment as to Plaintiff's remaining cause of action, breach of contract accompanied by fraudulent acts. (ECF No. 146.)  Plaintiff filed a response on August 9, 2021 (ECF No. 176), and Defendants replied to Plaintiff's response on August 13, 2021 (ECF No. 180).

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under governable law will properly preclude the entry of summary judgment." *Id.* at 248.  Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252.  The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party to avoid summary judgment. *See id.* at 248.

## III.     ANALYSIS

### a.    Elements of Breach of Contract Accompanied by a Fraudulent Act

Defendants first contend that summary judgment is appropriate because "Plaintiff has failed to establish and present evidence as to every element of the remaining cause of action." (ECF No. 146 at 6.)  To establish a breach of contract accompanied by a fraudulent act and recover punitive damages, a plaintiff must prove three elements: (1) breach of contract, (2) fraudulent intent relating to the breach, and (3) a fraudulent act accompanying the breach. *Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198, 202 (4th Cir. 1988) (citing *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502, 503 (S.C. Ct. App. 1985); *Harper v. Ethridge*, 348 S.E.2d 374, 378 (S.C. Ct. App. 1986)).

To establish breach of contract, Plaintiff must first prove the existence of a contract by showing the existence of an offer, acceptance, and valuable consideration. *Roberts v. Gaskins*, 486 S.E.2d 771, 773 (S.C. 1997) (citing *Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co.*, 437 S.E.2d 122 (S.C. 1993)).  Defendants contend Plaintiff fails to establish the existence of a contract because no consideration existed. (ECF No. 146 at 8.)  "Valuable consideration to

4

support a contract may consist of some right, interest, profit or benefit accruing to one party or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *J.C. White Lumber Co., Inc. v. Allen*, 410 S.E.2d 588, 590 (S.C. Ct. App. 1991) (citing *McPeters v. Yeargin Constr. Co., Inc.*, 350 S.E.2d 208 (S.C. Ct. App. 1986)).  Plaintiff argues that Defendants' ability to regain control of her apartment as a result of her 30-day notice constituted adequate consideration.  (ECF No. 176 at 11.)  To support this assertion, Plaintiff points to the email exchange between Plaintiff's daughter and Rayna Plowden, a member of Defendants' "traveling property management team" (*see* ECF No. 101 at 2), in which Ms. Plowden stated:

> If [Plaintiff] would like to transfer to Apt. 204 on 10/1/2015, I will just need her to give me a 30 day notice to vacate her current home Apt 1308, by today. You may do so by responding to all on this email (I copied the housing authority so they may stay apprised of her decision). The next step will be to receive her new RTA for Apt. 204 from her case worker.

(ECF No. 1-7 at 2.)  Plaintiff responded that same day, providing the requested 30-day notice and stating she would like to see apartment 204.  (*Id.*)  The court finds that the question of whether the email exchange constitutes evidence of consideration is open for interpretation and should therefore be given to the jury.  *Aiken Hosp. Grp., LLC v. HD Supply Facilities Maint., Ltd.*, No. 1:16-CV-03093-JMC, 2018 WL 2219492, at *2 (D.S.C. May 15, 2018) ("If the evidence [before the court] is conflicting or raises more than one reasonable inference as to the formation of a contract, the issue should be submitted to a jury.") (citing *Hendricks v. Clemson Univ.*, 578 S.E.2d 711, 716 (S.C. 2003)).

Next, Defendants contend that "[i]f a contractual obligation to transfer the [p]laintiff to a new apartment ever existed, the obligation was dependent on the satisfaction of a condition precedent, which was never satisfied."  (ECF No. 146 at 8.)  Defendants argue the email Plaintiff provides as the basis for the contract informed Plaintiff that approval by the State Housing

5

Authority was required before Plaintiff could transfer apartments. (*Id.* at 10–11.) Whether Plaintiff's submission of a Request for Tenancy Approval ("RTA") from the South Carolina Housing Authority constituted a condition precedent to Defendants' duty of performance depends on the intent of the parties. *See Edens*, 858 at 202 (citing *Champion v. Whaley*, 311 S.E.2d 404, 408 (S.C. Ct. App. 1984)). Defendants assert Ms. Plowden's statement that "[t]he next step will be to receive [Plaintiff's] new RTA for Apt. 204 from her case worker" was intended to create a condition precedent to their performance on the alleged contract. (*Id.*) Ms. Plowden's email, however, also stated that "[i]f [Plaintiff] would like to transfer to Apt. 204 on 10/1/2015, *I will just need* her to give me a 30 day notice." (ECF No. 1-7 at 2 (emphasis added).) The language "I will just need" could reasonably be interpreted to mean all that was required by Defendants for the transfer is Plaintiff's 30-day notice. Because a jury could reasonably infer the email did not create a condition precedent for Plaintiff to transfer apartments, a genuine issue of material fact exists, and summary judgment is not appropriate on this issue.

Defendants further argue that Plaintiff has failed to present sufficient evidence of fraudulent intent and fraudulent acts accompanying the alleged breach. (ECF No. 146 at 13, 16.) Breach of contract accompanied by a fraudulent act "requires proof of fraudulent intent relating to the breaching of the contract and not merely to its making." *Zinn v. CFI Sales & Marketing, Ltd*, 780 S.E.2d 611, 621 (S.C. Ct. App. 2015) (citing *Ball v. Canadian Am. Express Co.*, 442 S.E.2d 620, 623 (S.C. Ct. App. 1994)). The court finds that Plaintiff has presented sufficient evidence that a genuine issue of material fact exists as to whether Defendant acted with fraudulent intent. Plaintiff has put forth evidence showing a series of attempts by Defendants to remove her from her apartment during the period leading up to the alleged breach of contract. (*See* ECF Nos. 1-9 at 2; 1-11 at 2–5; 1-12 at 2–3.) Additionally, Plaintiff has introduced evidence that, despite having

6

allegedly entered a contract on September 1, 2015 to transfer Plaintiff on October 1, 2015, Defendants canceled Plaintiff's transfer on September 9, 2015, and thereafter on September 11, 2015, then had Plaintiff sign a release of her rights to sue them. (*See* Foster, Dep. 26:21–27:5, ECF No. 180-1 at 10; *see also* ECF No. 180-2 at 3.)

Further, the court finds Plaintiff has introduced sufficient evidence to create a jury issue as to whether a fraudulent act accompanied the breach. "The fraudulent act may be prior to, contemporaneous with, or subsequent to the breach of contract, but it must be connected with the breach itself and cannot be too remote in either time or character." *Zinn*, 780 S.E.2d at 621 (citing *Floyd*, 336 S.E.2d at 504). Plaintiff asserts that the circumstances surrounding her "alleged signature on the Early Termination of Lease Agreement and General Release are suspect, dishonest, and fraudulent." (ECF No. 176 at 13.) Specifically, Plaintiff contends that Defendants demanded she sign the release on September 11, 2015 in order to transfer to another apartment (ECF No. 1 at 12 ¶ 49); however, evidence in the record shows Plaintiff's transfer was canceled in Defendants' system on September 9, 2015 (*see* Foster, Dep. 26:21–27:5, ECF No. 180-1 at 10).

Viewing the facts in the light most favorable to Plaintiff, the court finds there are genuine issues of material fact as to Plaintiff's breach of contract accompanied by a fraudulent act claim that must be resolved by a jury. Therefore, summary judgment is not appropriate.

      b.    <u>The Early Termination of Lease Agreement and General Release</u>

Defendants also argue that Plaintiff's claim for breach of contract accompanied by a fraudulent act is barred by the Early Termination of Lease Agreement and General Release (the "Release") she signed. (ECF No. 146 at 20.) Defendants reference the following provision of the Release:

> Tenants hereby (a) release, waive, remise, relieve, acquit and forever discharge Deancurt Columbia LLC, The LEGENDS AT LAKE MURRAY APARTMENTS,

7

> PALMETTO POINTE APARTMENTS, Aspen Square Management, Inc. and their respective successors, assigns, officers, directors, shareholders, general partners, limited partners, managers, members employees, agents, contractors, representatives, attorneys, subsidiaries, and affiliates…jointly and severally, of and from any and ?all damages, injuries, actions, suits, arbitrations, mediations, proceedings debts, expenses, sums of money, accounts, controversies, promises, judgments, executions, claims, counterclaims, defenses, demands, damages, agreements, covenants, contracts, obligations, liabilities, offsets and rights of any nature whatsoever, whether arising at law or in equity, whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, or any other matter whatsoever or thing done, omitted, or suffered to be done by any Releasee, which has occurred in whole or in part, or was initiated at any time from the beginning of time up to and immediately preceding the moment of execution of this Agreement.

(*Id.* (citing ECF No. 1-13).)

The evidence in the record is subject to more than one reasonable interpretation. In the face of conflicting evidence, "summary judgment ordinarily is not appropriate because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility." *Wiggins v. Wallace*, No. 118-cv-1448-SAL, 2020 WL 1181305, at *2 (D.S.C. March 11, 2020) (citing *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002)). As noted above, Plaintiff disputes the fact that she knowingly signed the Release and that by signing it she released her rights to sue Defendants. (*See* ECF No. 176 at 1–3.) Plaintiff testified that she does not recall signing the Release and believed she was signing paperwork for an apartment transfer, not a lease termination. (Hunt Dep. 60:22–62:13, ECF No. 146-6 at 18.) Additionally, Plaintiff's daughter testified that she was present when Plaintiff allegedly signed the Release and that Plaintiff was only provided the signature pages of some of the documents she signed. (Riley Dep. 71:25–73:8, ECF No. 146-11 at 19.) The Court finds that the statements of Plaintiff and her daughter, if believed by a jury, would enable a jury to conclude that Plaintiff did not knowingly sign the release

agreement. As such, the question of whether Plaintiff knowingly signed the release agreement should be given to the jury to determine.

      c.      <u>Plaintiff's Alleged Medical Damages, Expenses, and Loss of Benefits</u>

Finally, Defendants contend that, should the court not be persuaded summary judgment is appropriate as to Plaintiff's remaining cause of action, it should still find summary judgment appropriate as to Plaintiff's alleged damages because Plaintiff has not met her burden of proving such damages "are causally related to her breach of contract with accompanying fraud claim." (ECF No. 146 at 21.) Under South Carolina law, a plaintiff can generally only recover breach of contract damages that "follow as a natural consequence and a proximate result of such breach." *Thompson v. Brown*, No. 7:19-cv-02504-TMC-JDA, 2019 WL 6255829, at *4 (D.S.C. October 3, 2019) (citing *Maro v. Lewis*, 697 S.E.2d 684, 688 (S.C. Ct. App. 2010).

Defendants argue that summary judgment should be granted as to Plaintiff's claims for medical damages resulting from the alleged breach of contract. "The purpose of an award of damages for breach of contract is to put the plaintiff in as good a position as he would have been in if the contract had been performed." *Minter v. GOCT, Inc.*, 473 S.E.2d 67, 70 (S.C. Ct. App. 1996). "General damages, that is, those which naturally, logically, and necessarily result from the breach of contract or injury, do not have to be specially pleaded; but may be proved under a general allegation of damages. Special damages, however, must be particularly alleged and proved." *Kline Iron & Steel Co. v Superior Trucking Co., Inc.*, 201 S.E.2d 388, 390 (S.C. 1973). "Damages for losses that are the natural and proximate, but not the necessary, result of the injury may be recovered only when such special damages are sufficiently stated and claimed." *Hobbs v. Carolina Coca-Cola Bottling Company*, 10 S.E.2d 25, 28 (S.C. 1940). Although the law implies general damages, "special damages are not implied by law because they do not necessarily result

9

from the wrong." *Sheek v. Lee*, 345 S.E.2d 496, 497 (S.C. 1986) (*citing Carolina Life Insurance Company v. Bank of Greenwood*, 60 S.E.2d 599 (S.C. 1950)).

In the Complaint, Plaintiff alleges physical injury and medical expenses associated with Defendants' negligent failure to comply with housing quality standards (ECF No. 1 at 13) but does not claim medical expenses resulting from Defendants' breach of contract accompanied by fraudulent acts. Plaintiff seeks actual damages including:

> medical expenses charged by Lexington Medical Center, Palmetto Health Richland hospital, Dr. Amy Epps, Dr. Jennifer Hucks, and South Carolina Mental Health when the actions of [Defendants'] employees made her worry about whether she would be able to remain in her home requiring that she defend herself in meritless court proceedings and Deancurt's [claims] for money not owed caused her to experience . . . as well as expenses incurred when [Plaintiff] was unexpectedly forced to move her belonging into a storage unit on October 1, 2015.

(ECF No. 146-10 at 13.)

Plaintiff can only allege Defendants aggravated her COPD because the condition existed prior to the alleged breach. Plaintiff alleges that Defendants' actions caused her to repeatedly suffer "shortness of breath episodes that were triggered by anxiety and other emotional responses to Aspen's dishonest campaign." (ECF No. 146-10 at 13.) The "dishonest campaign" appears to refer to the "meritless court proceedings" and "false claims" for money not actually owed. (*See id.*) These events, however, occurred before the alleged breach of contract underlying Plaintiff's remaining claim and therefore do not "naturally, logically, and necessarily result from the breach of contract." *See Kline*, 201 S.E.2d at 390. Further, Plaintiff testified that her health issues remained "about the same" after she moved out of her apartment. (Hunt Dep. 78:1–4, ECF No. 146-6 at 22.)

Defendants assert that, although they have identified two expert medical doctors, a pulmonologist, and a psychiatrist who have provided reports stating that Plaintiff's health issues

10

and alleged medical damages are not caused by or exacerbated by the allegations of her Complaint, "Plaintiff has not identified any expert who will testify to medical causation." (ECF No. 146 at 22–23.) The court notes that lay testimony is appropriate under certain circumstances. FED R. EVID. 701; *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575 (4th Cir. 2017), as amended (Mar. 7, 2017) (explaining "Federal Rule of Evidence 701 permits a lay witness with no need for expert qualification to give opinion testimony that is "rationally based on the witness's perception" and helpful to determining a fact in issue" and noting "the key to Rule 701 lay opinion testimony is that it must arise from the personal knowledge or firsthand perception of the witness."). However, Plaintiff has not provided any evidence to show special damages caused by the alleged breach of contract at issue. *See McNaughton v. Charleston Charter Sch. for Math & Sci., Inc.*, 768 S.E.2d 389, 396 (S.C. 2015) ("If the plaintiff's proof is speculative, uncertain, or otherwise insufficient to permit calculation of his special damages, his claim should be denied.") (citing *Jackson v. Midlands Human Res. Ctr.*, 374 S.E.2d 505, 506 (S.C. Ct. App. 1988)). Further, Plaintiff's own testimony provides that she has not incurred damages as a result of the breach. Accordingly, the court finds the evidence shows there is no genuine issue of material fact as to whether Defendants' alleged breach accompanied by a fraudulent act caused Plaintiff's medical expenses and summary judgment is appropriate as to this limited issue.

Next, Defendants maintain that Plaintiff has not provided receipts, bank records, or invoices for any rental payments resulting from the alleged breach. (ECF No. 146 at 23.) Plaintiff has, however, provided testimony that Defendants caused her to lose her apartment and her housing benefits, and she incurred rental, storage, and moving expenses as a result. (*See* ECF Nos. 1 at 19; 146-10 at 7–9.) Plaintiff has also provided evidence of the storage and moving expenses paid upon moving out of apartment 1308. (ECF No. 146-10 at 8–9.) The court cannot rule as a

matter of law that these damages were not caused by Defendants' breach.  The credibility of Plaintiff's testimony is for the jury to determine, not the court.  *See Guessous v. Fairview Property Investments, LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (citing *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)).  Accordingly, the court cannot state that no genuine issue of material fact exists as to whether Plaintiff incurred rental, storage, and moving expenses as a result of the alleged breach.

Defendants additionally argue, however, that "any requested compensation for rent paid after a year from the alleged breach of contract should be dismissed."  (ECF No. 146 at 23.)  Defendants explain that although "[t]he terms of this prospective lease were not specified," Plaintiff's previous leases at the Legends at Lake Murray had been for one year so any damages "for rent paid after that one-year period are not the probable, natural or foreseeable consequence of the breach of contract to move her into a new apartment and no rational juror could conclude differently."  (*Id.*)  The court agrees.

"In a breach of contract action, damages serve to place the nonbreaching party in the position he would have enjoyed had the contract been performed."  *Marceron v. Helms*, No. 2007-UP-542, 2007 WL 8400131, at *4 (S.C. Ct. App. Nov. 30, 2007) (citing *South Carolina Federal Sav. Bank v. Thornton–Crosby Development Co., Inc.*, 399 S.E.2d 8, 10–11 (S.C. Ct. App. 1990)); *see also Univ. Med. Assocs. of Med. Univ. of S.C. v. UnumProvident Corp.*, 335 F. Supp. 2d 702, 709 (D.S.C. 2004) ("In South Carolina, damages recoverable for a breach of contract are those which "follow as a natural consequence of the breach, or which may reasonably be supposed to have been within the contemplation of the parties at the time the contract was entered into.").  Plaintiff has not put forth any evidence to show the terms of the contract allegedly breached by Defendants would have been longer than the one-year term the parties had contracted to under her

prior lease. (*See* ECF No. 108-2.) Accordingly, the court finds Plaintiff cannot prove, as a matter of law, that Defendants caused her to incur rental expenses beyond one year from the alleged breach and finds summary judgment appropriate on this limited issue.

## IV.     CONCLUSION

For the reasons above, the court **GRANTS** Defendants' Amended Second Motion for Summary Judgment as to Plaintiff's claims for any rental or storage expenses incurred over one year beyond the alleged breach and as to Plaintiff's claims for medical expenses and **DENIES** the remainder of the Motion (ECF No. 146).

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 30, 2021
Columbia, South Carolina